**Betty GARLIC, et al., Plaintiffs,**

**v.**

**UNITED STATES FOOD AND DRUG
ADMINISTRATION, Defendant.**

**Civ. A. No. 91–2609 SSH.**

United States District Court,
District of Columbia.

Jan. 31, 1992.

Bernard Fensterwald, III, Fensterwald &
Alcorn, Vienna, Va., for plaintiffs.

Jacqueline H. Eagle, U.S. Dept. of Justice, Office of Consumer Litigation, Washington, D.C., for defendant.

ORDER

STANLEY S. HARRIS, District Judge.

■ This matter is before the Court on defendant's motion to dismiss. Plaintiffs suffer from Alzheimer's Disease. They filed this action seeking injunctive an declaratory relief against the United States Food and Drug Administration (FDA). Plaintiffs challenge the FDA's failure to approve the drug tetrahydroaminoacrinine (THA) as a treatment for Alzheimer's Disease.

Plaintiffs have not exhausted their administrative remedies by filing a "citizen's petition" as required by 21 C.F.R. § 10.-25(b) (1991). That section provides that "[a]n interested person may petition the Commissioner to issue, amend, or revoke a regulation or order, or to take or refrain from taking any other form of administrative action." [1] *Id.* The Commissioner must respond to the petition within 180 days. *Id.* § 10.30(e)(2). If the Commissioner does not approve, grant, or deny the petition within the 180–day period, he may provide a "tentative response indicating why the agency has been unable to reach a decision on the petition." *Id.* § 10.30(e)(2)(iii). The petitioner may seek review of the Commissioner's final decision in federal court. *Id.* § 10.45(d).

Plaintiffs contend that the procedure in § 10.25(b) is not mandatory because the regulation provides that an interested party "may" file a petition. That interpretation does not consider the regulation in the context of the entire drug approval process. In general, the regulatory scheme relies on drug manufacturers to promote new drugs. As plaintiffs state, "the process is structured so that little public input is sought or allowed." (Plaintiff's Opposition at 16.) Section 10.45 uses the term "may" in the context of permit-

---

**1.** The "Commissioner" refers to the Commissioner of Food and Drugs. ˙The Assistant Secretary for Health delegated his authority under a number of statutes, including the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 301 *et seq.,* to the Commissioner. 21 C.F.R. § 5.10 (1991).

ting limited public input. The provision for review of the Commissioner's final decision confirms that the procedure is intended to allow the FDA to develop its policy without judicial interference. The procedure also allows the FDA to produce an administrative record for the reviewing court to consider.[2]

Allowing "interested parties" to bypass the administrative remedies would undermine the entire regulatory process. Drug manufacturers could circumvent the FDA's procedures by soliciting private citizens to sue for judicial approval of new medications. Therefore, the Court concludes that plaintiffs must exhaust the administrative remedies contained in 21 C.F.R. 10.-25(b) before filing a claim to review the FDA's policy regarding THA.

Plaintiffs have not asserted a valid basis to waive the exhaustion requirement. Plaintiffs argue sympathetically that they and millions of Alzheimer's sufferers need fast access to an effective medication before the disease causes irreparable mental and physical deterioration. The Court does not doubt plaintiffs' sense of exigency and frustration. Nevertheless, as the Supreme Court has stated, "the Federal Food, Drug, and Cosmetic Act makes no special provision for drugs used to treat terminally ill patients." *United States v. Rutherford*, 442 U.S. 544, 552, 99 S.Ct. 2470, 2475, 61 L.Ed.2d 68 (1979). Thus, plaintiffs must wait for THA to pass the rigorous statutory and regulatory process designed to ensure that a medication is safe as well as effective before it is marketed to the public.

Plaintiffs contend that their claim is not subject to the exhaustion requirement to the extent that it asserts a Constitutional challenge. Plaintiffs assert that the Ninth and Fourteenth Amendments afford a right to follow a course of medical treatment to "prolong and improve" one's life. Thus, they claim that the FDA unconstitutionally has prohibited the private importation of THA. Several courts, including the Supreme Court, have acknowledged that decisions regarding medical treatment are essentially personal, and therefore may affect an individual's right to liberty or privacy. *See Whale v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1976); *New York State Ophthalmological Soc'y v. Bowen*, 854 F.2d 1379 (D.C.Cir.1988). However, there is no support for plaintiffs' claim that it is unconstitutional for the FDA to bar the use of unapproved medications. In fact, the Supreme Court's decisions suggest the contrary. *See Rutherford*, 99 S.Ct. at 2478; *Whale*, 429 U.S. at 589, 97 S.Ct. at 871.[3] Accordingly, the Court concludes that plaintiffs' complaint does not state a valid claim under the Constitution.

For the reasons set forth, it hereby is

ORDERED, that defendant's motion to dismiss is granted.

SO ORDERED.

---

2. If this Court were able to entertain plaintiffs' complaint without an administrative record, it would follow that it could exercise regulatory authority over experimental medications. Such matters are beyond both the Court's expertise and its jurisdiction.

3. In *Rutherford,* the Supreme Court upheld the FDA's limitations on the use of Laetrile, a drug many believed to be effective in treating cancer. The *Rutherford* Court stated:

Since the turn of the century, resourceful entrepreneurs have advertised a wide variety of purportedly simple and painless cures for cancer, including liniments of turpentine, mustard, oil, eggs, and ammonia; peat moss; arrangements of colored floodlamps; pastes made from glycerin and limburger cheese; mineral tablets; and "Fountain of Youth" mixtures of spices, oil and suet. By citing these examples, we do not, of course, intend to deprecate the sincerity of Laetrile's current proponents, or to imply any opinion on whether that drug may ultimately prove safe and effective for cancer treatment. But this historical experience does suggest why Congress could reasonably have determined to protect the terminally ill, no less than other patients, from the vast range of self-styled panaceas that inventive minds can devise.

*Rutherford,* 99 S.Ct. at 2478.